LIGON, EXECUTOR, ETC. *v.* INDIAN CREEK DRAINAGE DISTRICT No. ONE OF PANOLA, QUITMAN AND TUNICA COUNTIES, MISS., et al.

No. 42681          October 14, 1963          156 So. 2d 810

280

*James Stone & Sons, T. H. Freeland, III,* Oxford; *Ralph O. White,* Batesville, for appellant.

281

*McClure, Fant & McClure,* Sardis, for appellee, Indian Creek Drainage District.

*Threadgill & Hicks,* Columbus, for appellee, Dewitt T. Hicks.

McGEHEE, C. J.

The Indian Creek Drainage District Number One of Panola, Quitman and Tunica Counties filed this suit in the Chancery Court of Panola County to obtain the approval by the court of an assessment for damages made by the commissioners of the District, and when the case was tried before the chancellor he increased the amount of damages assessed by the commissioners for an easement over a 56.24 acre tract of land belonging to the appellee Dewitt T. Hicks. The amount of the appraisal made by the commissioners of the District as damages resulting to the land by the easement was

in the sum of $7,031.25. The chancellor added the sum of $300.00 to this amount and rendered a decree in favor of the landowner Dewitt T. Hicks and his lessee H. E. Ligon for the total sum of $7,331.25. H. E. Ligon was the lessee of the landowner Dewitt T. Hicks for the clay deposits under a lease of slightly more than 28 acres of the 56.24 acre tract of land. This lease was acquired on November 9, 1940. The easement sought to be obtained was for the construction and maintenance of a "flood water retarding structure" on the 56.24 acre tract. The decree was in a lump sum in favor of Hicks, the landowner, and the executor George H. Ligon, appellant. As to the right of the chancellor to apportion the damages assessed see Lee v. Indian Creek Drainage District, 246 Miss. 254, 148 So. 2d 663.

H. E. Ligon expended various sums of money in installing a clay mining operation on or near the land, erecting a clay shed or warehouse and removing a considerable overburden of soil, thereby rendering the merchantable clay, if any, on the land more accessible.

On August 9, 1943, the said H. E. Ligon subleased to Lee F. Powell his rights under the Hicks clay lease and then on account of having built the clay shed and expended various sums of money in removing the overburden of soil and rendering the clay more accessible, he was able to lease the land covered by the Ligon lease, and to obtain a consideration of 30¢ per ton instead of the 10¢ per ton he was to pay the landowner Hicks "for all clay shipped during the life" of the lease and also a minimum royalty of $600.00 per year to the lessor H. E. Ligon, and a royalty to the landowner Hicks of not less than $25.00 per year.

The said H. E. Ligon died testate during the year 1962, and the appellant George H. Ligon, who was the sole surviving heir at law and sole devisee under the will, was appointed executor of his estate, and on Febru-

ary 26, 1962, the cause was revived against the said executor and the landowner Dewitt T. Hicks, and an answer was filed on February 26, 1962, by the said George H. Ligon, executor of H. E. Ligon, deceased.

Upon the trial of the cause it was shown that the minimum royalty to which the landowner Dewitt T. Hicks was entitled had in the meantime been regularly paid, and at least the minimum royalty due the owner of the clay lease in the amount of $600.00 per year had likewise been fully paid.

On May 1, 1957, the clay lease had been assigned by the lessee Lee F. Powell to the Kentucky-Tennessee Clay Company; and on October 16, 1961, the Kentucky-Tennessee Clay Company executed an agreement in favor of the appellee Indian Creek Drainage District to subordinate all of its rights in favor of the said District at and for the sum of only $1.00, and thereafter on February 28, 1962, the said Kentucky-Tennessee Clay Company terminated its lease. Also the landowner was satisfied with the amount of damages assessed and did not appeal.

The subordination of the lease by the Kentucky-Tennessee Clay Company in favor of the Drainage District at a consideration of only $1.00 was taken into consideration by the chancellor in increasing the appraisement made by the Drainage District commissioners from $7,031.25 to only $7,331.25. Then too the chancellor considered that the testimony of the only geologist introduced by the appellant was "based on too much speculation and upon too little actual quest for facts, for it to be of great weight". This witness was unable to do more than estimate the average thickness of clay deposit under the 28 and a fraction acres of land covered by the clay lease in question. And it was not shown definitely that any clay was ever removed from the land covered by this particular lease.

While the appellant claimed damages in the sum of $38,500.00 he did not prove his alleged damages with any reasonable degree of certainty.

Moreover, H. E. Ligon had been granted only a determinable fee in all clays upon the land, and while the several leases granted to the lessee the right to collect a specified amount per ton of clay and a certain amount of royalty per annum for all clays shipped, it is left doubtful as to whether the leases were explicit enough to obligate the lessee to "mine and ship" any clay from the land. All clays "shipped from the land" in question, if any, were paid for by the respective lessees. Then too the lessees were given the right to terminate the lease by refraining from mining any more clay or failing to pay the minimum royalty to the landowner and to the owner of the clay lease.

We are therefore of the opinion that the decree of the chancellor allowing the sum of $7,331.25 to the appellant and the landowner should be affirmed in the proportion allowed.

Affirmed.

*Kyle, Ethridge, Gillespie and Rodgers, JJ.,* concur.